ROBERT ET AL. *v.* LEWIS ET AL.

[81 South. 481, Division A. No. 20651.]

1. TAXATION. *Tax sale. Confirmation of title. Burden of proof.*
    In a suit to confirm a tax title, the burden is upon the complainant to establish the validity of his own title for confirmation before the title of the defendant can come in question.

2. TAX SALE. *Persons who may purchase. Apparent holder of tax title. Validity. Estoppel.*
    The principle of equitable estoppel applies as against any purchaser at a tax sale who purchases land then assessed to him as owner.

3. SAME.
    Where complainants purchased land at a void tax sale and thereafter appeared to be the owner under such sale and were assessed with the land on the assessment roll of the county for taxes, and allowed the land so assessed to be sold for taxes, they were estopped from obtaining a valid title by purchasing at such second tax sale.

APPEAL from the chancery court of Wilkinson county. HON. R. W. CUTRER, Chancellor.

Suit by Robt. Lewis and others against Eugene H. Roberts and others. From a decree for complainants, defendants appeal.

The facts are fully stated in the opinion of the court.

*Bramlette & Bramlette,* for appellants.

We respectfully contend that the relation of Miller & Lewis to this land and their dealing with it was such that they acquired no title at the sale for taxes on March 4, 1907. This sale was for taxes for the year 1906, for which year this land was assessed to Miller & Lewis, the purchasers. The assessment roll for 1906 shows this undeniable fact, the sheriff and tax collector in his notice of the tax sale published in the Woodville

Republican recited this fact and the amount of taxes due thereon for state and county, and the very deed from the tax collector on which this alleged title here involved is based, also recited the fact of this land being assessed to Miller & Lewis.

Miller & Lewis attempted to buy at the tax sale on April 4, 1906, and appellees admit that their title acquired by this purchase was void. But the land, as the assessment roll for 1906 shows, was immediately assessed to Miller & Lewis, it does not affirmatively appear who gave the assessment of 1906, or how it happened to be assessed to Miller & Lewis. The land being taxable for the year 1906, Miller & Lewis did not pay the taxes for that year but permitted it to be sold on March 4, 1907, for the taxes of 1906, when they again purchased at the tax sale. There was no redemption from this last sale and appellees filed their bill to confirm this alleged tax title acquired on March 4, 1907, under which appellees claim title, which tax title the court below held to be legal and valid.

The facts in this case and in the case of *Smith* v. *Cassidy,* 75 Miss. 916, are almost identical. In that case the land in controversy belonged to the United States until 1890, but being on the assessment roll in 1887 assessed to "unknown owner," it was sold for taxes in 1888, and Cassidy became the purchaser, to quote from the statement of facts on pp. 916 and 917: "A new assessment was made in 1891, and the land was then assessed to Cassidy. It did not affirmatively appear who gave in the assessment of 1891, or how the land came to be then assessed to appellee. Cassidy did not pay the taxes of 1891, the land having become taxable for said year, but allowed it to be sold in 1892 for the taxes of 1891, when he again purchased at tax sale. There having been no redemption from the last sale, the appellee filed his bill in equity to confirm his tax title acquired in 1892. The court below decreed in

his favor, and defendant below who had filed a cross-bill to cancel the deed, appealed to the supreme court.''

Judge Whitfield for the court said: ''It is true that taxes are a charge *in rem;* that the ownership of the land is immaterial to the right and power of the state to sell for taxes. But it does not at all follow from this that a particular person may not sustain such relation to the land, and may not so conduct himself with respect to it, as to be estopped to buy at a tax sale. The state in such case will get its taxes, but he will not get the land. We think it clear that appellee's relation to this land and his dealing with respect to it, have been such that he acquired no title at the sale for taxes, in March, 1892, if any such sale there was. The appellant is entitled to the relief prayed in her cross bill'' pp. 918-019. We have confined our argument thus far to the validity of the alleged title for Miller & Lewis acquired at the tax sale of March 4, 1907, under which appellees claim title, and we submit that this tax title is utterly and wholly void, and we ask that this ·be so declared and the bill of complaint dismissed.

As before stated appellees did not allege actual occupation in their bill of complaint nor was there an effort made to prove same but on the other hand the testimony of appellee Lewis shows this land to be incapable of actual occupation. *Phillips et al.* v. *Gastrel,* 61 Miss. 413; *Dubose* v. *McNeil,* 104 Miss. 634.

We confidently assert that the tax title of Miller & Lewis is utterly void. However, had this tax title been valid, there is nothing in this record to show that appellee, W. L. Inman, ever acquired any interest in this land by deed or otherwise, or that Miller's alleged interest therein has ever been divested out of him, and it occurs to us that it is asking a little too much of this court to affirm the judgment of the court below confirming a tax title in appellee, W. L. Inman, when there is nothing in this record, to show any connection of said appellee, Inman, with said tax title to said land

or that he has any interest whatsoever therein by subsequent deeds or otherwise.

But we must respectfully submit that this error, as plain as it is, cannot approach in palpability the error of the court below in upholding this tax title of Miller & Lewis in view of the plain mandate of the law as laid down by this court in the case of *Smith* v. *Cassidy, supra,* and to pass on this tax title on this appeal would greatly simplify the future disposition of this cause. We again ask that the judgment of the lower court be reversed and appellees' bill of complaint be dismissed.

*Green & Green,* for appellees.

The tax sale of June 5, 1876, under which the appellant alone claimed title was void, because in 1876, and up to May, 1882, the state held the land as swamp and overflowed land, and it could not be sold for taxes. *Howell* v. *Miller,* 88 Miss., 655 *Hoskins* v. *I. C. R. R. Co.,* 29 So. 518.

It thus appearing that appellants had no title or interest in the land, they cannot complain of any sale made for taxes to Miller and Lewis. 37 Cyc. 1491, says: "And as a general rule, no one will be permitted to contest a tax title without first showing title in himself or in those under whom he claims at the time of the tax sale, for if a person is devoid of all interest in the land or cannot show he was injured by the tax sale, it would be against the policy of the law to permit him to impugn the validity of the sale," citing number of cases. *Wilkinson* v. *Hillar,* 71 Miss. 678.

Our statute, conferring jurisdiction upon the chancery court under the constitution, enlarges the jurisdiction to such an extent as that a suit to confirm title, or cancel clouds, is, substantially an action of ejectment in equity, for under section 309, Hemingway's Code, jurisdiction is given to try title, cancel deeds,

and clouds upon title, confirm title, and to decree possession, displace possession, decree rents and compensation for improvements and taxes,' and in all cases where said courts heretofore exercised jurisdiction auxilliary to the courts of common law, it may exercise such jurisdiction to grant the relief sought, although the legal remedy may not have been exhausted or the legal title established by the suit at law.''

It is well settled that in an action of ejectment, the defendant cannot show an outstanding title in third persons, with which he has no connection. *Tatom* v. *Caston,* 65 Miss. 488.

There could be no element of estoppel arising between appellants and appellees, for they were strangers one to the other, and appellees owed appellants no duty in respect to the land but each stood at arm's length, and, hence, the principle of equitable estoppel, which arises to prevent purchasers at tax sales, in derogation of duty owed to the owner of the land, does not and could not arise.

Under Section 6966, Hemingway's Code, it was declared in sales to individuals: ''Such conveyance shall vest in the purchaser, the perfect title to the lands sold for taxes, subject to the right of redemption and no such conveyance shall be invalidated in any court, except by proof that the land was not liable to sale for the taxes, or that the taxes for which the land was sold had been paid before sale, or that the sale had been made at the wrong time or place; and if any part of the taxes, for which the land was sold was illegal or not chargeable on it, but part was chargeable, that shall not affect the sale or validate the conveyance, unless it appear that, before sale, the amount legally chargeable on the land was paid or tendered to the tax collector.''

Construing this statute, *Reed* v. *Herd,* 97 Miss. 744, held: ''Code 1906, sec. 4332, providing that no tax sale shall be invalidated except by proof that the land was not liable for taxes, or that the taxes had been paid

before sale, or that the sale had been made at the wrong time or place, presupposes that land has been validly assessed and limits the defenses that may be made to a tax deed.''

There is no question here as to the validity of the assessment. The court there said, page 754: ''Not one of the causes enumerated in the above section as furnishing a defense to a tax deed exists in this case.''

Construing section 6966, Hemingway's Code, sec. 432, Code 1906; *Morris* v. *Thomas,* 95 Miss. 650, held, ''The state has been trying for many years to compel landowners to pay taxes on their land, and those who disregard their obligations to the state and fail to pursue the laws are entitled to have only themselves to blame, an assessment is necessary; but placing the land on the roll for assessment, with a valuation, by a description commonly used and understood, is an assessment, and the owner, who knows his own, is bound to look after it, and complain at the time and in the manner prescribed for all, and, if he does not, he must suffer the consequences. It is no hardship or injustice to visit the legal consequences of his disregard of duty and neglect of his interest on one who fails to give in his land for taxation, and to look after it, and pay the taxes on it, or redeem it until years have elapsed and sales have been made and value increased.''

*Thibodeaux* v. *Havens,* 77 So. (Miss.) 317, holds that where lands were struck off, first, to the state, and then afterwards struck off and conveyed to an individual, that the title of the individual must prevail over that of the state. The state could not complain of the sale under which Miller & Lewis purchased in 1907; nor could appellants, as there was no relation existing between them and Miller & Lewis which would give them the right to complain of the deed made by the state for the taxes to Miller and Lewis.

The complaint, and sole ground of complaint, is that the lands were assessed to Miller and Lewis, and that

they were under disabilities to purchase at a sale of lands made upon an assessment against themselves. If any such *status* existed in was because of equitable estoppel. *Morgan* v. *Blewitt,* 72 Miss. 903; *Graham* v. *Warren,* 81 Miss. 333.

Thus demonstrating that it is by reason of some relation of trust or confidence which debars one from purchasing at a tax sale lands assessed to themselves. Under section 6887, Hemmingway's Code, sec. 4256, Code 1906, the taxes imposed upon the land are made a personal debt of the owner, and if, as claimed, appellants were the owners of the land at the time it was assessed for the taxes of 1906, then, under section 6887, the taxes became a debt of theirs, irrespective of to whom the lands were assessed.

It is admitted by both appellants and appellees that appellees' title, under the sale for taxes of 1905, or 1906, was absolutely void, and, hence, appellees were not the owners of the land; and if appellants, as they claimed, were the owners, they could not complain of having their lands sold for a debt which they themselves owed.

This statute makes the taxes "A debt due by the person or corporation owning the property," and makes the assessment roll only "*prima-facie* correct."

Under this statute, it is immaterial to whom the lands are assessed, for the owner becomes liable for the taxes assessed against the land because of ownership thereof, and it becomes a personal debt of his.

Appellants rely upon *Smith* v. *Cassidy,* 75 Miss. 916, as controlling. A careful reading of that case will show that it has no application. The brief for the appellee there states that Clara Ann Smith, the complainant, was the owner of the land, and as such owner, she complained that her title had been divested by a purchase by Cassidy who procured an assessment to be made against and then a sale thereunder.

Thus Clara Ann Smith fell within the rule that the true owner of the land could not complain of the invalid-

ities of a tax sale, as shown *supra* in Cyc; but, in the case at bar, appellants had no title, the purchase in 1876 was absolutely void and they were strangers in title to the land. Hence, no equity could arise in their behalf.

We cannot find where *Smith* v. *Cassidy* has ever been cited, and there, no effect whatever was given to the section of the Code declaring the effect of a deed to the individual, as in the subsequent case cited *supra,* it arose prior to 1892, Code 1892, p. 3747, when section 6887 making it a personal debt of the owner, was first enacted, and therefore the owner, irrespective of the person assessed, was not liable for the taxes.

Suffice it, appellants were not the owners, and had no right to complain, and they cannot object, as between Miller and Inman, in the matter of ownership. This land was wild land, and the evidence shows that the acts of ownership of which it was susceptible were taken by Miller and Lewis, and that the land was occupied under purchase at a tax sale.

Under section 2459, Hemmingway's Code 1916, even though the tax deed was voidable by appellants, by reason of appellees' disabilities to buy, three years' actual possession would give title. *Hamner* v. *Yazoo Lumber Co.,* 100 Miss. 349, approved in *Caruth* v. *Gillespie,* 68 So. (Miss.) 930; *McCaughan* v. *Young,* 85 Miss. 278, holds: "Actual occupation, cultivation, *and residence* are necessary to constitute actual possession in the sense of being adverse to the true owner, where the land is so situated as not to admit permanent, useful improvements, and the continued claim of possession is evidenced by the public acts of ownership."

The evidence here shows that this overflowed land is in the bottom of a lake, and that all the acts of ownership of which it was susceptible were done by the appellees, and those through whom they claim.

*A. H. Jones,* for appellees.

Turning to the record, and reading it, clearly it appears that only one defense was made in the chancery court; only one theory was advanced, and the attention of the court was directed to one feature only—the validity of the tax sale of 1907. There was not a hint, and there is now not an assertion based on facts, that complainants did not have, and prove, mesne conveyance from Miller & Lewis.

The decree (pages 16 & 17) shows that complainants were the owners of the land. The record, as it appears here, does not set out the facts upon which this decree, so far as that feature is concerned, was based, but I submit that the decree is conclusive on this phase when the entire record is considered, and the contention of the appellants, as made in the lower court, are understood.

I assert—and I speak entirely on the record—that this question is an eleventh hour celebration; that it was not raised below, and therefore, not having been raised in the lower court cannot now be urged as error. *Doe v. Natchez Ins. Co.,* 87 S. & M. 197; *Anderson v. Leland,* 48 Miss. 253; *George v. R. R. Co.,* 88 Miss. 306; *Adams v. Clarksdale,* 95 Miss. 88; *Goodwin v. Mitchell,* 38 So. 657.

I assert, and the record so shows, that this question was not raised in the lower court, I do not admit that the proof was not in; I do not admit that the decree showing complainants to be the owners of the land involved was rendered without proof of the essential facts. I admit, only and solely, that the stenographer's notes approved as they were, and appearing in this record, fail to set out this chain of title.

If this court is to review the action and ruling of the lower court, and is to consider only those contentions brought to the attention of the court, and acted on it by it and there is only one solitary issue here—was the

sale of this land made in 1907 for the taxes of 1906 void because of the fact that the purchasers at that sale had also attempted to buy the land in 1906 for the tax of 1905?

Appellants reply here, as they relied below, on *Smith* v. *Cassidy,* 75 Miss. 916. That case was decided on facts entirely different from the facts in the case at bar. In *Smith* v. *Cassidy,* although the land was not taxable, Cassidy did not acquire a tax deed to it in the year 1888, Under the law then in force, one year only was allowed for redemption from tax sales, and so if the land had been taxable, the purchaser, Cassidy, would have had perfect title in 1889. The land was assessed to Cassidy thereafter, by his own act, and taxes were paid on it by him for the years 1888, 1889 and 1890. He exercised over this land the usual and ordinary acts showing title in himself; he had it assessed to himself at first, and he paid taxes on it; he claimed to own the land under this sale, as stated by Judge WHITFIELD: "his relation to this land, and his dealings with respect to it, have been such that he acquired no title at the sale for taxes in March, 1892, if any such sale there was. In other words, Cassidy was under the moral duty at least, to pay these taxes after paying them for the previous years and after he actually claimed he land.

I take it for granted that any one not under either a legal or a moral duty to pay taxes, may purchase at a tax sale. Were Miller & Lewis under any duty, of any kind, to any one? It is admitted that they acquired nothing at the sale in 1906; it is conceded that absolutely nothing passed to them by that attempted sale. How then can it be contended they were under obligations to pay any taxes on property not owned by them?

The only reason advanced, the only fact even attempted to be shown, is the mere fact that on the assessment roll for 1906 the name of Miller & Lewis appears as owners. The record and the assessment, does not

show why their names should so appear, nor by whose instructions it was done, but despite the appearance of their names, the validity of the sale is not and cannot be affected. The land had been attempted to be sold in the previous year; Miller & Lewis had attempted to buy it; even had that sale been regular and legal in all things still no title would have vested in them until the year 1909 they would only have had an inchoate title, a title which might or might not mature. They were not the owners; they repudiated the assessment as showing title in themselves by the very act of refusing to pay the taxes, and in allowing the land to be again sold for the taxes in the public manner required by law. They showed by their actions that they did not claim the land —as far apart from the actions of Cassidy in the cited case as can be imagined.

Being under no obligation of any kind to pay these taxes they could purchase at this sale. That a claimant under a prior void sale may acquire a good title at a subsequent sale for taxes see *Stanley* v. *Leomans,* 53 Ark. 438; *Neal* v. *Frazier,* 63 Iowa, 451; *Cox* v. *Gibson,* 27 Pa. St. 160; *Eaton* v. *North,* 29 Wis. 75.

Complainants must show title in themselves; ordinarily I do not question that doctrine, founded as it is in right, but it is strange that these appellants, after admitting, practically, that they have no title whatever to this land should now in desperation make the present contentions. I admit error as shown by this record—by this record only—but if this court should reverse and dismiss this case because of this apparent defect, not shown to the court below (in which the record itself errs) then I can only ask that the case be remanded in order that this missing fact may once more be shown.

HOLDEN, J., delivered the opinion of the court.

This suit involves the validity of a tax title to certain lands in Wilkinson county. The appellees filed their bill

to confirm their tax title, alleging title by purchase at a tax sale of March 4, 1907. It appears conclusively from the record that the appellees previously purchased this land at a tax sale on April 4, 1906; thereafter they appeared to be the owners under this sale, and were assessed with the land on the assessment rolls of the country for taxes for the year 1906. The sale of April 4, 1906, was void. The appellees while claiming and appearing to be the owners of the land under this 1906 tax sale, and permitting it to be assessed to them for the taxes of 1906, allowed it to be sold on March 4, 1907, for the said taxes of 1906, and became the purchasers at this sale, and upon this title they rely for confirmation.

Appellants, defendants below, were shown to have acquired title to this land many years previous to the present controversy. This we think is immaterial, however, for the reason that the burden was upon the complainants below to establish the validity of their own title for confirmation before the title of the defendants could come in question. The chancellor confirmed the tax title in appellees, and this appeal comes from that decree.

We see no merit in the several contentions made by the appellees to sustain the decree of the lower court. The decree of the chancellor seems to be clearly contrary to the rule announced in *Smith* v. *Cassidy,* 75 Miss. 916, 23 So. 427. We understand that case to apply the principle of equitable estoppel as against any purchaser at a tax sale who purchases land then assessed to him as owner. Whether the purchaser had the land assessed to himself for taxation, or whether he permitted the assessment by the tax authorities to appear in his name as owner, which he could have changed at the time provided by law for changing assessments and thus desclaimed or renounced any interest or title in the land, appears to make no difference under the rule announced. When the purchaser is designated the owner

by the tax assessment rolls, his relation to the land and his conduct with respect to it may be such as to preclude him by estoppel from acquiring a valid title to it by purchase at a tax sale under such assessment; he being the apparent owner.

The appellees alleged in their bill that the sale to them of April 4, 1906, was void; but they permitted the land to be assessed to them for the taxes of 1906, and sold in March, 1907, for the purpose evidently of securing a valid title by the latter sale. But we think this method of acquiring title is expressly condemned in the case of *Smith* v. *Cassidy, supra.*

The argument is made here by counsel for the appellees that they were not the owners of the land, and were under no obligation to pay the taxes on it for the year 1906, as their 1906 tax title was void, and that the mere fact of its being assessed to them, when they were not in truth the owners, would not estop them from obtaining a valid title by purchase at the sale of March, 1907.

We cannot agree with counsel in this contention, for the reason that the rule of estoppel applies on account of the relation of the purchaser to the land as appears by the assessment, and his conduct with reference thereto in connection with his apparent ownership. The purchaser in such case as the one here may be treated as, in effect, the owner who merely redeems his land by the purchase, on the theory that he was bound to pay the taxes upon his own property.

There was, it is true, no legal obligation upon appellee to pay the taxes upon the land here in question for the year 1906 because they were not the real owners; but the doctrine of equitable estoppel applies against them because of their apparent ownership and misleading conduct and relation to the land, with knowledge that it was assessed to them. In this situation the rule as announced in the case of *Smith* v. *Cassidy, supra,* applies to appellees and estops them from taking an *unjust*

advantage in the situation created by them. They cannot play the role of owners, delinquents, and purchasers all at the same time.

The decree of the lower court is reversed, and decree here for appellants.

*Reversed.*